## THE STATE v. HENRY C. STIMSON.

1. If a cashier or director, or officer of an incorporated bank, knowingly overdraw his account with the bank of which he is such officer, for his own benefit, although done without intent to defraud, and without defrauding the bank, he is guilty of a misdemeanor under the statute. (*R. S.* 125.) The evil intended to be remedied by the statute, was such officer knowingly overdrawing his account, without regard to his intention in so doing.

2. An indictment which states that the defendant was the cashier of an incorporated bank; that he kept an account of his dealings with the bank; that at a certain day there was no money due him from the bank, and that knowing the premises, he knowingly drew from the bank a certain sum of money for his own benefit, and thereby overdrew his account, sufficiently describes the offence against the statute; it is not necessary to state the manner, or by whose checks, or in how many checks he overdrew his account; nor is it necessary to state in what funds the overdraft was made.

This was an indictment found against the defendant, the late cashier of the People's Bank, at Paterson, for overdrawing his account with the bank while cashier. The first count of the indictment charged the overdrawing, without alleging any intent to defraud the bank. In neither count was the manner of overdrawing stated, whether it was by check or otherwise, or by whose checks, or how many, or in what funds was the money paid to him.

The indictment was removed from the Passaic Oyer and Terminer, where it was found, into this court by *certiorari*. The defendant demurred to the indictment, and upon the demurrer the argument was had upon the question whether a mere overdrawing, not coupled with any intent to defraud, or any actual defrauding or injury to the bank by such overdrawing, was sufficient to constitute the misdemeanor created by the statute, and also upon the insufficiency of the indictment in the manner of setting out the offence.

The argument was had before the CHIEF JUSTICE, and Justices ELMER and POTTS, by Mr. *Bradley* and Mr. *Zabriskie*, in support of the demurrer, and by Mr. *Barkalow*, prosecutor of Passaic county, for the state.

The CHIEF JUSTICE. The indictment in this case is founded on the first section of the act to punish frauds committed on the incorporated banks of this State. (*Rev. Stat.* 125.) It charges the defendant with knowingly overdrawing his account with the bank of which he was at the time cashier, for his own private use and benefit.

The first ground of demurrer is, that the indictment does not charge that the act was done *with intent* to defraud the corporation, or wrongfully to make use of the money. The validity of the objection depends upon the question whether the statute makes the fraudulent intent a constituent element of the offence. If it does not, the offence is complete, by the wilful commission of the act prohibited by the statute, without any corrupt motive. *Dwarris on Stat.* 677.

It is insisted, that by the statute the intent is made an essential ingredient of the offence; that the phrase, "with intent to defraud the said corporation," &c., refers to both the preceding clauses of the sentence, and applies as well to the act of overdrawing, as to the unlawful conversion of the funds of the bank. But this is neither the grammatical nor the more obvious literal import of the enactment. The sentence consists of two distinct members. The first relates to the overdrawing of an account; the second, to the purloining, embezzling or unlawful conversion of the funds of the corporation. Stript of irrelevant phraseology, the prohibition, as applicable to the cashier of a bank, would read thus: "If any cashier of any incorporated bank in this State shall knowingly overdraw his account with the bank of which he shall be cashier, for his own private use and benefit, or, if he shall purloin, embezzle, or convert to his own use, any money, bank bill, or note, the property of the said corporation, with intent to defraud the said corporation, or wrongfully to make use of the same, he shall be judged guilty," &c. The phrase, "with intent to defraud the corporation, or wrongfully to make use of the same," has (as has been said) no necessary or grammatical connection with the first clause of the sentence. That it was intended to have no such connection, is obvious, from the use of the term,

" to make use of *the same*," which applies exclusively to the money or funds of the corporation spoken of in the second clause of the sentence, and can have no possible application to the offence of overdrawing; and, though the fraudulent intent spoken of, in its grammatical construction, is coupled with the entire second clause of the sentence, it was designed to apply solely to the unlawful conversion of the funds of the corporation. The design of the legislature was to punish bank officers for theft, embezzlement, or for any unlawful conversion whatever of the funds of the corporation to his own use, with intent to defraud the corporation, or wrongfully to make use of the funds so converted. It is not probable that they designed to enact that theft or embezzlement should be charged to have been committed, with intent to defraud. The fraudulent intent is involved, necessarily, *ex vi terminorum*, in the crimes specified.

That the construction designated, is the true construction of the statute, is abundantly manifest by adverting to the original enactment, and to the various changes and modifications which it has since undergone.

The first section of the act of 1820, (*Rev. Laws*, 801,) made the act of purloining, embezzling, or converting to his own use, by an officer of the bank, of the funds of the corporation, with intent to defraud the corporation, or wrongfully to make use of the same, an indictable offence. By the third section of the same act, overdrawing his account, contrary to the rules of the bank, or overdrawing, and refusing for ten days after notice, to make good his account, subjected the officer to removal from office.

The act of 26th February, 1829, (*Han.* 212), first declared the act of overdrawing by an officer of the bank, to be an indictable offence. It is not unworthy of notice, that the act of 1820, is entitled, " An act to punish frauds committed on the incorporated banks of this State." The act of 1829, is entitled, " An act to prevent frauds by incorporated companies," so that the legislature in making the overdrawing by a bank officer indictable, would seem to have had regard rather to the protection of the public against the frauds of

corporations, than to the protection of the corporation against the frauds of its own officers. By the fifth section of the latter act, it is enacted that if the cashier of any incorporated bank in this State shall knowingly overdraw his account with the bank of which he shall be cashier, or shall in any way knowingly or wrongfully convert to his own use and benefit, any of the money, bills, notes, or other funds of the said bank, with intent to defraud the said bank, he shall be judged guilty of a high misdemeanor, &c.

The act of 1820, was not repealed by the act of 1829. Both statutes remained in force. By the *Revised Statutes* of 1846, the first clause of the fifth section of the act of 1829, making the act of overdrawing by a bank officer, for his own private use, an indictable offence, was incorporated with the first section of the act of 1820, relating to the offences of purloining, embezzling, or unlawfully converting the funds of the corporation. In that connection they now stand upon the statute book.

In the original act, it is clear, that the intent to defraud, is made no element of the crime of overdrawing. It was not intended by the legislature that it should be. The design was to repress, by severe penal inflictions, a prevalent abuse of trust by bank officers, in appropriating to their own use, without lawful authority, and without adequate security, the funds entrusted to their care. The practice was prejudicial, not only to the stockholders and creditors of the banks, but to the public at large, by depriving them of the benefits which the institution was designed to secure, and exposing them to the greater hazard of the evils of a depreciated currency. So far as the public was concerned, the intent with which the act was done, was immaterial. The evil to be repressed, was the appropriation by the officers of the funds of the bank to their own use, without authority, and without adequate security, thus converting, by the act of its guardians, an institution primarily designed as a public benefit, into the mere instrument of private emolument, and an efficient engine of fraud and peculation upon the public. If it be true, as was suggested upon the argument,

that the statute has not operated to repress the evil; that a different construction has been given to its provisions, and that bank officers of character and respectability, habitually or frequently, knowingly overdraw their accounts, it certainly affords no reason why this court should judicially repeal a salutary statute, or modify its vital provisions. If the construction contended for on the part of the defendant be adopted, viz., that the overdrawing of an account by a bank officer, though done knowingly and wilfully, is no crime, unless an intent to defraud the bank be charged and proved, the statute is a dead letter. It may safely be assumed that the accounts of directors and bank officers are rarely overdrawn with deliberate intent to defraud the bank. It is done for purposes of private gain, with an honest design to refund the money, with interest. But the evil is not, therefore, any the less.

The fraudulent intent constitutes no part of the offence with which the defendant is charged; this ground of demurrer cannot be sustained.

The second ground of demurrer is, that the offence charged in the indictment is not described with sufficient clearness and particularity, in three particulars, viz:—1. It is not averred that the account overdrawn was the bank account of the defendant. 2. The means and manner in which the overdrawing was effected, whether by check or otherwise is not stated; and 3. What was drawn from the bank, whether notes or money, or of what kind, is not described or specified.

The material charges in the indictment are—that the defendant, at the time of the commission of the alleged misdemeanor, was the cashier of the People's Bank, at Paterson, an incorporated bank in this State; that at that time, and for more than a year next preceding, he had and kept an account of the business and dealings which he had with the bank; that on the day of the commission of the alleged offence, there was no sum or balance of money due from or owing by the bank to him, on account of said business or dealings, or on any account whatever; that the defendant,

well knowing the premises, unlawfully and knowingly did draw from the said bank, on his own account, and for his own private use and benefit, $2,850, lawful money of the United States, of the money of the said bank, and did thereby unlawfully and knowingly overdraw his account with the said bank, for his own private use and benefit.

It cannot be denied, that the offence is set forth substantially in the language of the statute. The charge is made in language clear and unequivocal. The indictment not only charges that the account was overdrawn, but in general terms avers *how* it was overdrawn. It avers that there was an account kept of all the defendant's business and dealings with the bank; that there was nothing whatever due from the bank to the defendant upon that account, or upon any other; and that the defendant, knowing the premises, knowingly drew from the bank, upon his own account, $2,850. It is true that the indictment does not in terms aver that he drew the money upon his bank account. But if his bank account contained an account of his business and dealings with the bank—if there was nothing whatever due from the bank to the defendant upon that account, or upon any other; and if he drew upon his account from the bank, $2,850, or any sum of money whatever, must he not, of necessity, have overdrawn his account with the bank. Is there not an exclusion of every conclusion against the charge?

But it is said that it is not averred that the defendant drew the money from the bank, by his own check, or by the check of another, or by what means it was drawn. But can a man draw money from the bank upon his own account, in any way whatever, except by his own check or draft? Can a man overdraw his account in any other way? He may undoubtedly obtain the funds of the bank unlawfully, by purloining, or embezzling, or by the illegal conversion of the funds of the bank to his own use, and thereby render himself a debtor of the bank. But this is not overdrawing his account with the bank, either in common parlance, or in strict technical phraseology. The term "overdraw" is not

recognized or adopted by the lexicographers; but it has, nevertheless, a definite and well understood meaning. The third section of the act of 1820, (*Rev. Laws*, 801), appropriately describes the offence of overdrawing an account by an officer of the bank, to be an act by reason whereof he unlawfully obtains money from the bank upon his check. Money is drawn from bank by him who draws the check, not by him who receives the money; and it is drawn upon the account of the individual by whose check it is drawn, though it be paid to and for the benefit of another. The defendant could not have drawn the money from the bank upon his own account, except by means of his own check or draft, nor could he overdraw his account with the bank in any other manner. The charge, therefore, is sufficiently clear and intelligible, and standing as it does in connection with other averments in the indictment, it leaves no room for question as to the manner in which the offence was committed. But it is urged that the number of checks by which the account is overdrawn should be stated, when dated, to whom given, and for what amount. A moment's reflection will satisfy the mind that in many cases it would be a matter of great difficulty to determine by means of what particular check or checks the legal offence of overdrawing the account had been effected. If a party should give two checks of different dates, which together would exceed the balance of his account, and the account should thereby be overdrawn, the check which was drawn last being presented and paid before the other, by which check could it be averred that the account was overdrawn? Not, it would seem, by the check first drawn, for when drawn there were funds sufficient in the bank to satisfy it. Nor by that last drawn, for when presented there were funds sufficient to satisfy it, and the account was not in point of fact overdrawn by that check.

It is easy to conceive of cases where legal ingenuity and human industry could scarcely frame an indictment or sustain it by evidence, if this degree of particularity should be

required. Nor is it perceived that such minuteness of description could be of any real advantage to the defendant.

The main offence is the overdrawing of the account, and it seems unnecessary to describe the particular checks or drafts by which it is effected.

It is further objected, that there is no description of the money or funds drawn from the bank. The offence charged against the defendant is overdrawing his account with the bank. Of what avail would it be to the defendant to state whether it was drawn in gold or silver, or bank notes—in dollars, dimes or cents—and how is the fact by any possibility to be ascertained or proved? In requiring the crime to be described in the indictment with legal certainty, so that the just rights of the defendant may be protected, it is important that the court should carefully avoid the extreme of requiring such particularity as effectually to shield the guilty and defeat the ends of justice.

The last ground of demurrer is, that time and place are not added to all the material averments of the indictment. The rule that every material fact stated in an indictment must be charged to have been done on a particular day, and at a particular place, does not apply to mere negative averments, nor to acts of omission, nor to the circumstances giving character to the acts; nor is the rule applied with the same strictness to indictments for misdemeanors as for felonies. *Arch. Cr. Pl.* 11; *Com. Dig.* "*Indictment,*" *G.* 2; *State* v. *Dayton,* 3 *Zab.* 60. The indictment, in this particular is not defective. The place where the accounts were kept, is a circumstance not material. The offence is charged to have been committed at Paterson.

The demurrer should be overruled.

ELMER and POTTS, Justices, concurred.